UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RODNEY BRUCE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-264-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court is the Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support [Docs. 19 & 20] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Rodney Bruce Johnson ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I. BACKGROUND**

On June 8, 2010, the Plaintiff filed an application for supplemental security income, claiming a period of disability that began on December 31, 2010. [Tr. 173]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

121]. Following a hearing, the ALJ found the Plaintiff was "not disabled." [Tr. 21-37]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on May 25, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. Having considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record, the Court finds that the medical history of the Plaintiff and the content of the ALJ's decision are not in dispute, and need not be repeated here.

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

2

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

The Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. The ALJ determined that the Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except he can manipulate gross objects but not fine objects due to some limitation in bilateral dexterity, and he should work with things rather than people." [Tr. 29]. The Plaintiff submits that (1) the ALJ did not properly weigh the medical opinion of medical expert Allan R. Goldstein, M.D., regarding the Plaintiff's physical limitations, and (2) the ALJ relied on his own lay opinion, rather than the medical opinions of record, in assessing the Plaintiff's mental limitations. [Doc. 20 at 7-13].

"[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013; *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (holding that opinions rendered by one-time examiners are not entitled to any special degree of deference). Instead, the opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which

3

tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

### A. Medical Opinion of Allan R. Goldstein, M.D.

Dr. Goldstein appeared at the administrative hearing as an impartial medical expert and rendered an opinion on the severity of the Plaintiff's back impairment, as well as the functional limitations resulting from a right wrist impairment. [Tr. 24, 51]. Dr. Goldstein testified that based on treatment records from a pain clinic, the Plaintiff's report of back and neck pain and leg weaknesses and numbness were symptoms "consistent with a disc disease with depression on the nerves." [Tr. 51 (citing Exhibit 13F)]. Dr. Goldstein attributed the Plaintiff's back impairment to a four-wheeler accident that occurred in June 2013. [Tr. 51, 393]. CT scans that were taken following the accident revealed degenerative disc disease and spondylosis at C6-7, a non-displaced pelvic facture, and "normal" thoracic spine. [Tr. 385]. The orthopedic doctor who evaluated the Plaintiff recommended non-operative treatment, but the Plaintiff did not return for his follow-up appointment. [Tr. 341].

Dr. Goldstein opined that based on the Plaintiff's back and neck discomfort, as well as leg weakness and numbness, the Plaintiff's impairment equaled Listing 1.04A. [Tr. 51-52]. Dr. Goldstein observed that because no MRI was performed to prove the presence of disc disease with depression of the nerves, he could only clinically opine that the Plaintiff medically equaled the listing. [Tr. 52].

Dr. Goldstein also opined that the Plaintiff suffered from a right wrist impairment as the result of an old fracture with a history of deformity and the presence of carpal tunnel syndrome. [Tr. 51]. Based on the Plaintiff's wrist impairment, Dr. Goldstein assessed the following functional limitations: the Plaintiff could lift up to 10 pounds; he would have some limitation

4

pushing, pulling, and lifting overhead; he could not climb stairs, ladders, or scaffolds because of the possibility of having to "hold on;" and he would be limited with the use of his hands for fine and gross manipulation. [*Id.*].

The ALJ assigned "little weight" to Dr. Goldstein's testimony that the Plaintiff's back impairment equaled Listing 1.04A and the functional limitations he assessed. [Tr. 31]. The ALJ concluded that Dr. Goldstein's opinion was not supported by the record, noting the lack of diagnostic evidence documenting degenerative disc disease with nerve compression. [*Id.*]. In addition, the ALJ found that Dr. Goldstein's opinion was based on the Plaintiff's report of weakness, numbness, and pain which reports the ALJ found were not credible. [*Id.*]. Moreover, the ALJ cited to medical records in which the Plaintiff was discharged from the pain clinic for noncompliance as a result of a urinary drug screen that revealed the presence of non-prescribed substances. [*Id.*].

The Plaintiff contends that the only reason the ALJ rejected Dr. Goldstein's opinion was because the ALJ did not find the Plaintiff credible, *i.e.*, his reports of weakness, numbness, and pain, and his discharge from a pain clinic for noncompliance. [Doc. 20 at 8]. The Plaintiff argues that the ALJ may not use an adverse credibility finding as a basis to reject Dr. Goldstein's opinion. [*Id.*]. The Plaintiff argues that in doing so, the ALJ ignored the medical evidence of record which documents that the Plaintiff was on crutches for months following his pelvic fracture, he had a limping gate, "awkward gross motor movements," decreased lower extremity range of motion, right arm deformity, positive neurological signs in the right wrist, and numbness and decreased strength in the right wrist. [*Id.* at 8-9 (citing Tr. 351, 357-58, 385, 387, 389, 391, 394, 409, 412-13)]. The Plaintiff also submits that his dismissal from a pain clinic fails to provide any basis for rejecting Dr. Goldstein's opinion. [*Id.* at 9-10].

5

The Court finds no merit in the Plaintiff's arguments. As an initial matter, the Court finds that the Plaintiff has not met his burden in demonstrating that he meets or medically equals Listing 1.04A. At step three, a claimant may only be found "disabled" if his impairment meets or medically equals, as opined by Dr. Goldstein, one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). Only when an impairment satisfies *all* of the listing's criteria will the impairment be found to be of listing level severity. § 416.925(d). The claimant bears the burden of proof that he meets or equals a listed impairment. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Evidence of the following is required in order to meet or equal Listing 1.04A:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04.

Here, the Plaintiff has not cited to any evidence of motor loss, sensory loss, reflex loss, or positive straight-leg raising test, all of which are required by paragraph A. While Dr. Goldstein relied on treatment records from a pain clinic to show that the Plaintiff experienced leg weakness and numbness, these treatment records merely document the Plaintiff's subjective allegations and do not include any examination or objective findings beyond decrease range of motion of the back to substantiate the Plaintiff's complaints. [Tr. 385-92]. In fact, these same records also document that the Plaintiff had a steady gait, he worked part-time in construction, he was able to perform

6

activities of daily living, and his pain was reported "tolerable" one month after his four-wheeler accident. [Tr. 385, 387, 389, 391]. The Plaintiff complains that the ALJ should have developed the record further by ordering diagnostic testing to determine whether nerve compression was present given Dr. Goldstein's testimony. [Doc. 20 at 10]. An ALJ only has a duty to develop the record further when "the evidence in [the] case record is insufficient or inconsistent." 20 C.F.R. § 416.920b. Here, the record contains sufficient evidence demonstrating that the Plaintiff does not satisfy the paragraph A criteria. Therefore, the Plaintiff would still fall short of satisfying Listing 1.04A even with favorable diagnostic images demonstrating compression of a nerve root.

The Court further finds that it was appropriate for the ALJ to reject Dr. Goldstein's opinion and functional limitations because it was "based on the claimant's report of weakness, numbness, and pain which is not found to be of the severity alleged." [Tr. 31]. The Plaintiff insists that the ALJ's credibility finding regarding the Plaintiff's subjective complaints cannot serve as substantial evidence. But our appellate court has held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir.2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir.1989)). In this case, the ALJ relied on the medical evidence of record in concluding that the Plaintiff's subjective complaints were not as severe as alleged. During a consultative examination with Jeffrey Uzzle, M.D., which was performed two months following the Plaintiff's four-wheeler accident, the Plaintiff exhibited negative straight-leg raising test bilaterally in the sitting and supine position, he had full muscle strength and sensation intact in all extremities except the right hand, normal reflexes, and despite mild limping on the right lower extremity, he demonstrated good stationary standing balance, good ability to toe walk and heel walk, excellent tandem walking balance, an ability to ambulate effectively without the use an

assistive device, and an ability to perform a deep knee bend without difficulty. [Tr. 30, 357-58]. Dr. Uzzle also noted mild to moderate right wrist deformity but opined that the Plaintiff could lift and carry up to 50 pounds occasionally. [Tr. 357, 359]. Despite Dr. Uzzle's lifting restriction, the ALJ gave the Plaintiff the benefit of the doubt and limited him to light work. [Tr. 31].

The Plaintiff also complains that the reason for his discharge from a pain clinic is not material to whether substantial evidence supports Dr. Goldstein's opinion and limitations assessed. To the contrary: a claimant's "attempt[] to seek medical treatment for pain or other symptoms *and to follow that treatment once it is prescribed* lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 (July 2, 1996). The Plaintiff's failure to adhere to treatment undermines his subjective allegations which Dr. Goldstein relied on, in part, in assessing the severity of the Plaintiff's impairments.

Accordingly, the Court finds that substantial evidence supports the ALJ's assignment of "little weight" to Dr. Goldstein's opinion, and the Plaintiff's allegations to the contrary are not well-taken.

**B.  Medical Opinions Regarding the Plaintiff's Mental Limitations**

The record contains three medical opinions that pertain to the Plaintiff's mental ability to perform work-related activities. The first of these is an opinion from Robert Spangler, Ed.D., who conducted a consultative examination on July 7, 2013. [Tr. 351-55]. Dr. Spangler opined the following limitations: the Plaintiff's ability to understand and remember is "limited;" his ability to sustain concentration and persistence "is erratic and mild;" his ability to interact socially is "limited;" and his ability to adapt is "limited intermittently." [Tr. 355].

The record also includes two opinions from non-examining state agency psychologists.

8

The first opinion was rendered on August 7, 2013, by Robert de la Torre, Psy.D. [Tr. 81-83]. Dr. de la Torre gave "partial weight" to Dr. Spangler's opinion, observing that Dr. Spangler's limitations were "somewhat vaguely phrased with no specific ratings for most domains (mild-moderate-marked)." [Tr. 77].

Dr. de la Torre also completed a Mental Residual Functional Capacity Assessment. [Tr. 81-83]. The assessment first required that he answer a series of detailed questions to "help determine the individual's ability to perform sustained work activities." [Tr. 81]. Importantly, the questionnaire section is not an RFC determination. [*Id.*]. Following the questions, a narrative is provided which records the claimant's actual RFC. [*Id.*]. In response to the questions, Dr. de la Torre found the Plaintiff was "moderately limited" in his ability to: maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to change in the work setting. [Tr. 81-83]. As to all other questions, Dr. de la Torre indicated that the Plaintiff was "not significantly limited." [*Id.*]. In the narrative portion of the assessment, Dr. de la Torre opined that the Plaintiff had the following RFC:

> A. Claimant has the ability to understand and perform Simple and Detailed Tasks, but not Multi-Step Detailed tasks.
>
> B. Claimant can sustain concentration, persistence and pace with customary breaks within the restrictions applied above.
>
> C. Claimant cannot interact effectively with the general public. Will work better with things than with people. Claimant has the ability to interact appropriately with supervisors and peers within the restriction applied above.

> D. Claimant can set goals independently and adapt to infrequent change within the restrictions applied above.

[Tr. 83]. A second state agency psychologist, Rebecca Joslin, Ed.D., re-iterated the foregoing opinion and functional limitations on December 2, 2013. [Tr. 100-102].

The ALJ gave "some weight" to the opinions from the state agency psychologists' assessment of moderate limitations in social functioning and an ability to work better with things rather than people. [Tr. 31]. The ALJ found this limitation consistent with medical records documenting anxiety and reported symptoms to treating and examining sources. [*Id.*]. "Little weight" was given to their assessment of moderate limitations in concentration persistence, and pace because it was not supported by "the totality of the evidence." [*Id.*]. In this regard, the ALJ cited to Dr. Spangler's examination which documented erratic but mild concentration due to anxiety at a time when the Plaintiff was not being treated. [*Id.*]. The ALJ also gave some consideration to Dr. Spangler's opinion that the Plaintiff was significantly limited in social functioning but agreed with the state agency psychologists' observation that the limitations assessed were vague. [*Id.*].

The Plaintiff argues that the ALJ erroneously rejected the moderate limitations opined by the state agency psychologists in the questionnaire section of the assessment. [Doc. 20 at 11]. The Plaintiff concedes that Dr. Spangler did not opine specific work-related limitations, but maintains that his opinion does support the notion that the Plaintiff is more limited in the areas of concentration, persistence, and pace and adaption as found by the state agency psychologists. [*Id.* at 12]. The Court is not persuaded.

First, the moderate limitations the Plaintiff refers to are the responses the state agency psychologists provided in the questionnaire section of the assessment. As explained above, their

responses do not constitute an RFC but rather serve as a worksheet for assessing the RFC. The ALJ was not obligated to weigh these responses or include them in his RFC determination. Instead, the ALJ properly weighed the actual RFC determination which was provided in the narrative portion of the assessment. Second, the ALJ provided substantial evidence for concluding that the Plaintiff did not have moderate limitations in concentration, persistence, and pace. The ALJ relied on Dr. Spangler's assessment that the Plaintiff showed erratic but *mild* limitations in concentration. [*Id.*]. The Plaintiff also argues that he has greater restrictions in the area of adaption because Dr. Spangler found that the Plaintiff was "limited" in this regard. [Doc. 20 at 12]. However, the ALJ properly declined to give Dr. Spangler's opinion further weight because many of the functions he assessed, including adaption, were vague as he did not rate an actual degree of limitation.

Finally, to the extent that the Plaintiff argues his RFC is not supported by substantial evidence because it is not based on a specific medical opinion of record, "[t]he Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (rejecting the argument that an ALJ's RFC determination must be based on a medical advisor's assessment). "Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017). Therefore, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a [RFC] finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Accordingly, the Court finds the Plaintiff's second contention of error is without merit.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge